```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION
```

SFR SERVICES, LLC,

      Plaintiff,

v.                                  Case No:  2:19-cv-369-FtM-99NPM

EMPIRE INDEMNITY INSURANCE
COMPANY,

      Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. #38) filed on June 12, 2020.  Plaintiff filed a Response (Doc. #39) on June 26, 2020.  For the reasons set forth below, the motion is granted, the Amended Complaint is dismissed without prejudice, and leave is granted to file a second amended complaint.

**I.**

The Court adopts and incorporates by reference the procedural history and background facts as set forth in Plaintiff's Response. (Doc. #39, ¶¶ 1-14.)  Plaintiff SFR Services, LLC (SFR or plaintiff), as assignee of the insured, asserts that Empire Indemnity Insurance Company (Empire or defendant) breached an insurance Policy insuring six buildings at a condominium complex in Naples, Florida (the Insured Property).  The operative pleading

1

is the one-count breach of contract Amended Complaint, which attaches a copy of the Policy and an Appraisal. (Doc. #37.)

While conceding Empire has paid the amount determined by a court-ordered Appraisal performed pursuant to the Policy (Doc. #37, ¶¶ 16-24), the Amended Complaint nonetheless asserts that Empire has refused to pay all damages covered by the Policy. (Id. at ¶ 25.) The Amended Complaint further asserts that the Appraisal calculation of the roof repair costs for three of the six buildings was premised on using tiles "harvested" from the other three buildings (which were to receive new roofs). (Id. at ¶ 21.) However, according the Amended Complaint, a building permit is required to do the roof repairs/replacement, but the harvested tiles are not approved by the Collier County Growth Management Division—Planning and Regulation (the Building Department). (Id. at ¶¶ 22-23.) Thus, the Amended Complaint alleges, Empire "failed to properly indemnify the Plaintiff for loss to the buildings . . . because the payment amount [of the Appraisal] was based upon the use of materials which are no longer approved products or under a current NOA [Notice of Acceptance]." (Id. at ¶ 24.) "In other words, by utilizing a methodology requiring repairs to be made using a product not approved or under a current NOA, the [Appraisal] umpire exceeded the scope of his authority . . . ." (Id.) In sum, the Amended Complaint asserts that the Policy required Empire to pay "an amount sufficient to repair the damages

2

of the Insured Property resulting from the covered Loss" (Id. at ¶ 29), and that Empire materially breached the Policy "[b]y refusing to pay Plaintiff the amount necessary to repair or replace the damage to the Insured Property." (Id. at ¶ 30.)

Defendant moves to dismiss plaintiff's Amended Complaint, arguing that it fails to state a cause of action for breach of contract. (Doc. #38, pp. 1-2.) Defendant asserts that it complied with the Policy's Loss Payment condition when it elected to pay "the value of lost or damaged property," which under the Policy is the Replacement Cost Value (RCV). (Id., p. 2.) Defendant contends that the Amended Complaint concedes defendant paid plaintiff the RCV (less the deductible), and that by paying the amount determined by the Appraisal it has paid all amounts due and owing under the Policy. (Id., pp. 5-6.) As such, Defendant maintains that the face of the Amended Complaint establishes it did not breach any of the terms or obligations set forth in the Policy. (Id., p. 6.)

## II.

The Court begins, as it must, with the language of the Policy. See Zodiac Grp., Inc. v. Axis Surplus Ins. Co., 542 F. App'x 844, 849-50 (11th Cir. 2013). Empire agreed with the insured to provide insurance as stated in the Policy. (Doc. #37, p. 15.) Coverage was provided for six condominium buildings, each of which selected the Optional Coverage valuation of replacement cost. (Id., pp. 17, 19.)

The Policy's Condominium Association Coverage form provided that Empire "will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Id., p. 30.) It is undisputed that the six condominium buildings were Covered Property and that there was a direct physical loss or damage caused by or resulting from a windstorm, which is a Covered Cause of Loss. (Id.; Doc. #37, ¶ 6.)

The loss payment for such covered losses is *ordinarily* at the option of Empire pursuant to the following Policy provision:

**4. Loss Payment**

   **a.** In the event of loss or damage covered by this Coverage Form, **at our option**, we will either:

   **(1)** Pay the value of lost or damaged property;

   **(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

   **(3)** Take all or any part of the property at an agreed or appraised value; or

   **(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

   We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

   **b.** The cost to repair, rebuild or replace does not include the increased cost attributable to

4

       enforcement of any ordinance or law regulating the construction, use or repair of any property.

       . . .

   **g.** We will pay for covered loss or damage to Covered Property within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

      **(1)** We have reached agreement with you on the amount of loss; or

      **(2)** An appraisal award has been made.

(Doc. #37, p. 39)(emphasis added).

    Empire's options under this Policy, however, were more restricted because the Declaration pages to the Policy show that an Optional Coverage valuation was selected for all six buildings. (Id., pp. 17, 19.)  Thus, as discussed below, replacement cost became the loss payment standard, and payment of increased cost attributable to enforcement of ordinance or law became a possibility.

    With the Policy's Optional Coverage selected, "Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form." (Id., p. 43, ¶ 3a.)  Under the Replacement Cost standard, Empire would not pay more than the least of "(1) The Limit of Insurance applicable to the lost or damaged property; (2) The cost to replace the lost or damaged property with other property: (a) Of comparable material and quality; and (b) Used for the same purpose; or (3)

5

The amount actually spent that is necessary to repair or replace the lost or damaged property." (Id., p. 43, ¶ 3e.)

Empire and SFR disagreed on the value of the amount of loss, and therefore an appraisal was available under the Policy. (Doc. #37, p. 45, ¶ B.) Each party selected an appraiser, and the two appraisers selected an umpire. (Id.) "A decision agreed to by any two will be binding." (Id.)

The Amended Complaint alleges that the Appraisal determined the RCV, which has been paid by Empire. (Doc. #37, ¶¶ 18-19.) The Amended Complaint alleges, however, that the determination and payment did not include the increased repair costs caused by the inability to use harvested tiles and obtain the required County permit. (Id. at ¶¶ 21-24.) Plaintiff asserts an entitlement under the Policy to these increased costs as part of the Appraisal. (Id. at ¶ 25.) The Policy establishes, however, that while plaintiff may eventually be entitled to an additional amount, it is not due now as part of the Appraisal. See (Doc. #37, p. 43, ¶ 3f.)

Ordinarily under the Policy, the Replacement Cost "does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property." (Id.) However, Additional Coverage applies "to buildings to which the Replacement Cost Optional Coverage applies." (Id., p. 33, ¶ 4e(1).) As noted above, such optional

6

Replacement Cost coverage is shown on the Declaration pages of the Policy. (Id., pp. 17, 19.)

With this Additional Coverage, Empire agreed to "pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage." (Id., p. 33 ¶ 4e(2).) The limitations, however, includes a provision that Empire will not pay for the increased amount "[u]ntil the property is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage . . .." (Id. at ¶ 4e(7).)[1]

---

[1] The Policy states in pertinent part:

> **e. Increased Cost Of Construction**
>
> **(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.
>
> **(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, **we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.(3) through e.(9) of this Additional Coverage**.
>
> **(3)** The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

7

The Appraisal properly did not consider "increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property" since such costs had not yet been incurred. See Jossfolk v. United Prop. & Cas. Ins. Co., 110 So. 3d 110 (Fla. 4th DCA 2013).  The Amended Complaint contains no allegations that SFR had actually repaired or replaced any roof, or applied for or obtained a building permit to do so, and the Court is limited to

---

**(4)**  Under this Additional Coverage, we will not pay any costs due to an ordinance or law that: (a) You were required to comply with before the loss, even when the building was undamaged; and (b) You failed to comply with.

.  .  .

**(7)**  With respect to this Additional Coverage:

  **(a)**  **We will not pay for the Increased Cost of Construction:**

   **(i)**  **Until the property is actually repaired or replaced,** at the same or another premises; and

   **(ii)**  Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(Doc. #37, p. 34)(emphasis added).

the four corners of the Amended Complaint and its attachments. Hi-Tech Pharm., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018). The Court therefore may not consider the new facts asserted in Plaintiff's Response, which alleges that plaintiff applied for a permit through the Collier County Building Department, and it was rejected due to the invalid NOA for the harvested tiles. (Doc. #39, pp. 4-5.)

The Court finds that the Amended Complaint does not plausibly show that defendant has failed to comply with its obligations under the insurance Policy. Because it may be possible to make such allegations, however, the Court will allow an amended complaint to be filed.

Accordingly, it is hereby

**ORDERED**:

1. The Amended Complaint (Doc. #37) is **DISMISSED** without prejudice.
2. Plaintiff may file a second amended complaint within fourteen (14) days of the date of the Opinion and Order.

**DONE** and **ORDERED** at Fort Myers, Florida, this ___6th___ day of January, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

9

Copies:
Parties of Record